1  DANIEL I. HALIMI (SBN: 302872)
2  **HALIMI LAW FIRM**
   1455 Frazee Rd., Suite 500
3  San Diego, California 92108
4  (855) 453-2946
   daniel@halimilawfirm.com
5
6  Attorney for Plaintiff TRACI MORGAN,
   AS TRUSTEE OF TMI ASSETS TRUST
7

8              **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10                                        **'22 CV 1918 CAB AHG**

11  TRACI MORGAN, AS TRUSTEE      Case No.: 22-CV-1141 TWR (JLB)
    OF TMI ASSETS TRUST,
12                                **VERIFIED COMPLAINT FOR:**
              Plaintiff,
13                                **1) INTENTIONAL**
    vs.                              **MISREPRESENTATION;**
14
    AARON MICHAEL HOOK, an        **2) FALSE PROMISE;**
15  individual; PROFESSIONAL
    INSTALLERS, INC., a North     **3) BREACH OF CONTRACT**
16  Carolina limited liability company;  **[MULTIPLE COUNTS]; AND**
    and Does 1 through 10, Inclusive,
17  Jointly and Severally,        **4) FINANCIAL ABUSE OF A**
                                     **DEPENDENT ADULT**
18            Defendants.
                                     TRIAL BY JURY DEMANDED
19

20

21

22

23

24

25      Plaintiff TRACI MORGAN, AS TRUSTEE OF TMI ASSETS TRUST,

26  alleges as follows:

27  ///

28  ///

# I.   **PARTIES**

1. Plaintiff TRACI MORGAN, AS TRUSTEE OF TMI ASSETS TRUST ("Traci"), is and at all relevant times was a resident of San Diego County, State of California.

2. Based on information and belief, Defendant AARON MICHAEL HOOK ("Hook") is currently a resident of Columbiana County, State of Ohio. At other relevant times, Hook was a resident of North Carolina and Kansas.

3. Defendant PROFESSIONAL INSTALLERS, LLC ("Professional Installers") was incorporated in the State of North Carolina on or around October 16, 2019. The North Carolina Secretary of State administratively dissolved Professional Installers on or around June 15, 2021. Professional Installers remains administratively dissolved to date.

4. Traci alleges that there exists, and at all relevant times there existed, a unity of interest in ownership between Hook and Professional Installers, such that any individuality and separateness between them has ceased, and that they are the alter egos of each other, and that Professional Installers is and was a mere shell and sham conceived, intended, and used as a device by Hook to avoid individual liability.

5. Traci is unaware of the true names and capacities, whether individual, corporate, associate or otherwise, of those Defendants named as Does 1 through 10, inclusive, which Plaintiff therefore names by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously named Defendants is in some way responsible and/or liable to Plaintiff as herein alleged and caused the damage to Plaintiff as herein alleged. Plaintiff will amend this complaint to allege the true names and capacities and the responsibility and/or liability of such fictitiously named Defendants when same are ascertained.

///

///

HALIMI LAW FIRM
ATTORNEY AT LAW
SAN DIEGO

VERIFIED COMPLAINT

## II.   JURISDICTION AND VENUE

6. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because the amount in controversy, when accounting for allowable statutory damages, punitive damages, and attorney's fees, exceeds $75,000.00 and because the parties are citizens of different states.

7. Venue is proper in Southern District under to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred in this district.

## III.   GENERAL ALLEGATIONS

8. Traci is Deafblind and suffers from Usher Syndrome: a severely debilitating and progressive disease that causes both complete deafness and complete blindness (the Disabilities) for which she is in the late stages of. The Disabilities prevent Traci from carrying out normal activities and from protecting Traci's rights – as this case illuminates. At all relevant times, Traci was a dependent adult, as defined under Cal. Welf. & Inst. Code, § 15610.23 (a) and a disabled person, as defined under Cal. Civ. Code, § 1761(g).

9. Racing against time, Traci worked hard to accumulate a life savings with the goal of purchasing a home in San Diego, California, before Traci's disability progressed and deprived Traci of the ability to grow her life savings.

10. While residing in San Diego, California Traci sought to hire a general contractor to make improvements to Traci's investment property in Kansas City, Missouri.

11. In this effort, Traci found Hook's advertisement on Craigslist (Kansas) that Hook posted while he resided in Kansas. Hook's Craigslist advertisement read (paraphrasing): "Licensed and Insured General Contractor Looking for Investors to Flip Properties" or similar wording.

12. In response to Hook's advertisement, Traci informed Hook that Traci was not looking to be an investor, but was interested in hiring Hook as a general contractor to make improvements to Traci's Kansas City property. Hook accepted the project after reaffirming that Hook was a licensed contractor.

HALIMI LAW FIRM
ATTORNEY AT LAW
SAN DIEGO

VERIFIED COMPLAINT

13. During the course of the project, Hook learned of Traci's Disabilities and of Traci's life savings. Unfortunately, Hook later exploited Traci's Disabilities, vulnerability, and generous nature by means of fraud and interstate commerce. Attached and incorporated in this complaint as **Exhibit 1** are true and correct copies between Traci and Hook where Hook represents that he is a licensed contractor and where Traci informs Hook that Traci is on disability with limited funds. In these messages, Traci also informed Hook that Traci is a "kind person who loves helping people. But I am starting to feel burned." In these text messages, Traci also informs Hook that Traci is vulnerable to exploitation and implies that she has been taken advantage of before in the past.

14. After being charged with driving under the influence in Kansas, Hook relocated back to North Carolina (where Hook previously resided) from Kansas for unknown reasons. But it soon became clear that Hook was in dire financial distress.

15. On or around June of 2020, Hook persuaded Traci to invest in his company, Professional Installers under a profit-sharing agreement with the promise of high returns on Traci's investment. Hook had represented to Traci that Hook and Professional Installers were licensed general contractors.

16. Relying on Hook's representations, and with the hope of quickly adding to her life savings, Traci sent $18,000.00 from Traci's bank account in California to Professional Installers in North Carolina by wire transfer, as Hook directed. Hook and Traci memorialized the investment in the profit-sharing agreement attached and incorporated as **Exhibit 2** (the "Profit-Sharing Agreement").

17. Although Traci later learned neither Hook nor Professional Installers were licensed contractors, as Hook had represented, Hook assured Traci that his contractor's license was coming soon and was delayed by the pandemic.

18. On September 1, 2020, Hook persuaded Traci to personally loan Hook $2,000.00 to satisfy amounts Hook owed for a DUI violation in Kansas. As

Hook directed, Traci electronically transferred the additional $2,000.00 to Hook's bank account in North Carolina electronically via Zelle from Traci's bank account in California.

19. Hook ceased all communication with Traci between November of 2020 through August 31, 2021.

20. On August 31, 2021, Hook contacted Traci again and persuaded Traci to personally loan Hook an additional $2,800.00. Growing concerned, Traci agreed on the condition Traci and Hook memorialize all personal loans to Hook, with Hook personally guaranteeing to repay Traci's investment in Professional Installers, in a written loan agreement. ("the Loan Agreement"). Hook agreed.

21. As Hook directed, Traci transferred an additional $2,800.00 to Hook in North Carolina electronically via Western Union from Traci's bank account in California.

22. Under the Loan Agreement, Hook personally agreed to repay Traci's $18,000.00 investment in Professional Installers, and the $5,000.00 in personal loans to Hook, in monthly payments with interest accruing at 20% per year. Hook also agreed that any late monthly payment would incur a $100.00 late fee. The Loan Agreement includes a California choice of law provision. The Loan Agreement is attached and incorporated as **Exhibit 3**.

23. During the following year, Hook and Professional Installers failed to make any payment to Traci under the Profit-Sharing Agreement or the Loan Agreement (collectively, the "Agreements"). Hook individually and on behalf of Professional Installers only offered excuses in place of due payment.

24. Making matters worse: Hook was cited for another DUI violation on or around February of 2022 – placing Hook further in debt.

25. Hoping to recoup her life savings, Traci offered to help Hook get back on his feet, resume work, and hopefully repay Traci. In this effort, Traci offered to loan Hook additional funds under the Loan Agreement on the condition that Hook

HALIMI LAW FIRM
ATTORNEY AT LAW
SAN DIEGO

stop drinking, resume work and repay Traci for other previously-incurred expenses Traci incurred for Hook and Professional Installers, and for all expenses Traci would continue to incur for Hook and Professional Installers subject to the terms of the Loan Agreement.

26. Hook accepted Traci's offer; Hook promised to repay Traci for all expenses Traci previously incurred for Hook and for Professional Installers, and would incur for Hook and Professional Installers subject to the terms of the Loan Agreement, promised to stop drinking, and promised to resume work from San Diego, California (where Traci resides).

27. Relying on Hook's assurances, Traci paid for Hook to travel to San Diego, California from jail in Kansas, where Hook was serving time for his second DUI conviction, paid for a replacement vehicle (a 2009 Land Rover LR2), paid for replacement tools, and paid for related expenses, totaling approximately $24,257.32 – in additional to previous expenses Traci incurred for Hook (collectively, the "Additional Expenses"). Hook agreed that the Additional Expenses were subject to the terms of the Loan Agreement – including the 20% interest per year and $100.00 late fee.

28. Unfortunately, after only a few days, Hook drove the replacement vehicle to Tijuana, Mexico while drinking and driving – even after Traci had previously warned Hook of the dangers of driving to Mexico in a luxury vehicle.

29. This was the last straw. Traci came to the unfortunate realization that Hook was taking advantage of Traci. Traci could no longer afford to help Hook or protect the life savings Hook had obtained from Traci – neither financially nor emotionally. Disappointed for the last time, Traci paid for Hook to fly back to North Carolina. Traci subsequently learned that Hook instead drove from California back to his hometown in Ohio in the replacement vehicle.

30. Adding to the disappointment: Traci later learned that neither Hook nor Professional Installers were licensed general contractors, or obtained said

1   license, as Hook had represented to Traci. Aside from $430.00 of payments

2   made in 2020, neither Hook nor Professional Installers have made any

3   substantial payment under the Agreements to date. Based on information and

4   belief, Hook and Professional Installers never intended to repay Traci in full,

5   and instead intended to defraud Traci and abscond with all funds and property

6   obtained from Traci for wrongful use. Traci alleges that Hook used Traci's

7   investment in Professional Installers for wrongful, personal use.

8   **FIRST CAUSE OF ACTION**

9   **(FRAUD [INTENTIONAL MISREPRESENTATION])**

10  **Against all Defendants**

11  31. Traci incorporates by reference all allegations of paragraphs 1 through 30 as if

12  set forth in full.

13  32. Before entering into the Agreements, and before obtaining any funds from Traci,

14  Hook represented to Traci that Hook and Professional Installers were licensed

15  general contractors and later that Hook and Professional Installers were in the

16  process of receiving a contractor's license (the "Representation"). Hook made

17  the Representation individually and on behalf of Professional Installers. Hook

18  made the Representation verbally and in writing and/or by implication as

19  evidenced by the written Profit-Sharing Agreement.

20  33. The Representation was false: Neither Hook nor Professional Installers were

21  licensed general contractors or were in the process of receiving a contractor's

22  license at the time Hook made the Representation to Traci. Hook knew the

23  Representation was false when Hook made the Representation to Traci.

24  34. Hook intended for Traci to rely on the Representation to induce Traci's consent

25  to the Agreements and to induce Traci's transfer of funds to Professional

26  Installers and to Hook under the Agreements and to induce Traci's loan for the

27  Additional Expenses.

28  35. Traci reasonably relied on the Representation when Traci entered into the

HALIMI LAW FIRM
ATTORNEY AT LAW
SAN DIEGO

- 7 -

VERIFIED COMPLAINT

Agreements, sent funds to Professional Installers and Hook, and when Traci paid for the Additional Expenses. Traci would not have entered into the Profit-Sharing Agreement had Traci known that neither Hook nor Professional Installers were licensed general contractors able to legally conduct business. Traci would not have entered into the Loan Agreement or paid the Additional Expenses had Traci known that Hook could not derive income as a licensed general contractor to repay Traci.

36. As a direct and proximate result of Hook's fraudulent Representation, individually and on behalf of Professional Installers, Traci was harmed in the amount of $47,333.49 and also suffered emotional distress in the form of depression, stress, anxiety, shame, embarrassment, worry for her financial future, fear in trusting others, and anger, for which Traci also seeks compensation.

37. In engaging in the acts set forth above, Hook and Professional Installers were motivated by and acted with oppression, fraud, and malice, as defined in California Civil Code Section 3294. Hook and Professional Installers also acted with full knowledge of the consequences and damages that would foreseeably be caused by Hook and Professional Installers fraudulent Representation. Hook, individually, and on behalf of Professional Installers, intended to deceive Traci and induce Traci's reliance on the false Representation to obtain and abscond with Traci's money. Traci seeks punitive damages against Hook and Professional Installers to the maximum extent permitted by law.

## SECOND CAUSE OF ACTION

### (FALSE PROMISE)

### Against all Defendants

38. Traci incorporates by reference all allegations of paragraphs 1 through 37 as if set forth in full.

39. Before entering into the Profit-Sharing Agreement, and before obtaining any

HALIMI LAW FIRM
ATTORNEY AT LAW
SAN DIEGO

VERIFIED COMPLAINT

funds from Traci, Hook, individually and on behalf of Professional Installers, promised to repay Traci's initial investment and promised to pay Traci a share of Professional Installer's profits, as set forth in the Profit-Sharing Agreement ("Promise 1").

40. Before entering into the Loan Agreement, and before obtaining personal loans from Traci, Hook promised to repay all personal loans Traci made to Hook, as set forth in the Loan Agreement ("Promise 2").

41. Before Traci paid for the Additional Expenses, Hook promised to repay Traci for the Additional Expenses and promised Traci that Hook would stop drinking and would resume work in California ("Promise 3").

42. Hook, individually and on behalf of Professional Installers, did not intend to perform Promise 1, Promise 2, or Promise 3 (collectively, the "Promises") when those Promises were made to Traci. Instead, Hook, individually and on behalf of Professional Installers, intended to abscond with all funds obtained from Traci without any intention of full repayment at the time those Promises were made to Traci. Aside from $430.00 of payments made in 2020, neither Hook nor Professional Installers have made any substantial payment under the Agreements to date or for the Additional Expenses.

43. Hook intended for Traci to rely on the Promises to induce Traci's consent to the Agreements, to induce Traci's transfer of funds to Hook and Professional Installers, and to induce Traci's payment of the Additional Expenses.

44. Traci reasonably relied on the Promises when Traci entered into the Agreements, sent funds to Hook and Professional Installers, and when Traci paid for the Additional Expenses.

45. As a direct and proximate result of Hook and Professional Installer's false Promises, Traci was harmed in the amount of $47,333.49 and also suffered emotional distress in the form of depression, stress, anxiety, shame, embarrassment, worry for her financial future, fear in trusting others, and anger,

for which Traci also seeks compensation.

46. In engaging in the acts set forth above, Hook and Professional Installers were motivated by and acted with oppression, fraud, and malice, as defined in California Civil Code Section 3294. Hook and Professional Installers also acted with full knowledge of the consequences and damages that would foreseeably be caused by Hook and Professional Installer's false Promises. Hook, individually, and on behalf of Professional Installers, intended to deceive Traci and induce Traci's reliance on the false Promises to obtain and abscond with Traci's money. Traci thus seeks punitive damages against Hook and Professional Installers to the maximum extent permitted by law.

## THIRD CAUSE OF ACTION

### (BREACH OF CONTRACT [COUNT 1])

### Against Defendant Professional Installers, LLC.

47. Traci incorporates by reference all allegations of paragraphs 1 through 46 as if set forth in full.

48. Traci and Professional Installers, LLC entered into the written Profit-Sharing Agreement.

49. Traci did all, or substantially all, of the significant things that the Profit-Sharing Agreement required Traci to do. Traci made an initial investment of $18,000.00, as Hook directed on behalf of Professional Installers.

50. Professional Installers failed to make any payment to Traci as required under the Profit-Sharing Agreement. Professional Installers failed to repay any portion of Traci's initial investment and also failed to report or share any profit, as required.

51. As a direct and proximate result of Professional Installer's breach of contract, Traci was harmed in the principal amount of $18,000.00 in addition to Traci's share of Professional Installer's profits as due under the Profit-Sharing Agreement, which remain to be determined.

VERIFIED COMPLAINT

*///*

## THIRD CAUSE OF ACTION

### (BREACH OF CONTRACT [COUNT 2])

### Against Defendant Aaron Michael Hook

52. Traci incorporates by reference all allegations of paragraphs 1 through 51 as if set forth in full. Traci alleges this cause of action in the alternative to all fraud causes of action.

53. Traci and Hook entered into the written Loan Agreement. Hook also agreed to repay Traci the Additional Expenses under the terms of the Loan Agreement.

54. Traci did all, or substantially all, of the significant things that the Loan Agreement required Traci to do, unless legally excused.

55. Hook failed to make any payment to Traci as required under the Loan Agreement.

56. As a direct and proximate result of Hook's breach of contract, Traci was harmed in the amount of $61,269.28 to date. Interest and late fees continue to accrue.

## FOURTH CAUSE OF ACTION

### (FINANCIAL ABUSE OF A DEPENDENT ADULT)

### Against all Defendants

57. Traci incorporates by reference all allegations of paragraphs 1 through 56 as if set forth in full.

58. While Hook and Professional Installers knew Traci suffered from the Disabilities, Hook individually, and on behalf of Professional Installers, fraudulently obtained funds from Traci in the amount of $47,333.49 with intent to defraud Traci and/or by undue influence, as alleged above, in violation of Cal. Welf. & Inst. Code, § 15610.30.

59. Hook and Professional Installers also knew that they were obtaining funds from Traci's life savings on which she intended to rely as her Disabilities progressed. Traci had informed Hook and Professional Installers via text message that her

HALIMI LAW FIRM
ATTORNEY AT LAW
SAN DIEGO

VERIFIED COMPLAINT

funds for Profit Sharing Agreement, the Agreement, and the Additional expenses were coming from Traci's life savings which Traci intended to rely on before her Disabilities progressed. Traci informed Hook that Traci would be otherwise reliant on an insufficient $1,800.00 monthly social security disability income.

60. Traci was harmed as a direct and proximate cause of Hook and Professional Installer's financial abuse of Traci while Traci suffered from the Disabilities.

61. In engaging in the acts set forth above, Hook and Professional Installers were motivated by and acted with oppression, fraud, and malice, as defined in California Civil Code Section 3294. Hook and Professional Installers also acted with full knowledge of the consequences and damages that would foreseeably be caused by Hook and Professional Installer's financial abuse of Traci while Traci suffered from the Disabilities. Traci thus seeks punitive damages against Hook and Professional Installers to the maximum extent permitted by law.

62. Traci also seeks treble damages against Hook and Professional Installers for their financial abuse of a dependent adult, as authorized under California Civil Code section 3345.

63. Traci also seeks attorney's fees as afforded under Cal. Welf. & Inst. Code, § 15657.5.

64. Traci also seeks damages for emotional distress in the form of depression, stress, anxiety, shame, embarrassment, worry for her financial future, fear in trusting others, and anger.

## **PRAYER FOR RELIEF**

Plaintiff TRACI MORGAN, AS TRUSTEE OF TMI ASSETS TRUST prays for relief and judgment against all Defendants as follows:

1. For actual damages, including expectation damages, consequential damages, and incidental damages;

2. Damages for emotional distress;

- 12 -

3.  For attorney's fees and costs;

4.  For punitive damages;

5.  For treble damages; and

6.  For such other and further relief as the court may deem proper.

## **JURY DEMAND**

Plaintiff TRACI MORGAN, AS TRUSTEE OF TMI ASSETS TRUST demands a trial by jury on all triable claims.


DATED: November 26, 2022                    **HALIMI LAW FIRM**

                                    By: _____
                                        Daniel I. Halimi
                                        Attorney for Plaintiff TRACI
                                        MORGAN, AS TRUSTEE OF
                                        TMI ASSETS TRUST

1

2

## __VERIFICATION__

3    I, Traci Morgan, am the trustee of TMI ASSETS TRUST, and the Plaintiff in

4  the above-entitled action. I have read the foregoing Verified Complaint and know

5  the contents thereof. The allegations of the Verified Complaint are true of my

6  knowledge, except as to those matters alleged on information and belief, and as to

7  those matters, I believe them to be true. Attached and incorporated **as Exhibit 1** are

8  true and copies of my text messages with Defendant Aaron Michael Hook.

9  Attached and incorporated as **Exhibit 2** is a true and correct copy of the Profit-

10 Sharing Agreement. Attached and incorporated as **Exhibit 3** is a true and correct

11 copy of the Loan Agreement.

12

13    I declare under the penalty of perjury under the laws of the State of

14 California and the United States of America that the foregoing is true and correct.

15

16 DATED: November 26, 2022

17                                        By: _____

18                                              TRACI MORGAN, AS TRUSTEE OF
                                                 TMI ASSETS TRUST

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

**Aaron Hook**
(913) 232-6677

She is working off her debt as I paid her in advance to get a transmission replaced, shelter because her ex kicked her out, etc etc.

I am a kind person who loves helping people. But I am starting to feel burned.

May 23, 2020

I have 5 employees, all tools truck trailer. 20 years experience running full rehabs

 Licensed insured

Aaron Hook • May 23, 2020

Anyways, my goal is to either fix and flip or fix and rent.

I am looking for affordable tho.

May 23, 2020

 A lot of very good references

Aaron Hook • May 23, 2020

I am on disability so its not liek I am rich. lol

May 23, 2020

I like to do owner finances 7 year plans

And selling flips of course

EXHIBIT 2

# Investment & Profit Sharing Agreement

## Professional Installers, LLC - TMI Assets Trust

**Dated: June 12, 2020**

## Parties

This agreement is between:

Aaron Hook & Melinda Cutler of Professional Installers, LLC, incorporated in the state of North Carolina (hereinafter referred to as 'Company') and Travis Morgan, Trustee for TMI Assets Trust (hereinafter referred to as 'Investor'). No other parties are included in this agreement except as allowable under the law and each individual stated above and their respective estates. This contract shall be governed by the laws of Kansas where Company currently has headquarters and doing business and will continue doing business in the foreseeable future.

Although Company has more than one Officer with interest in Company and Investor is one individual representing Investor, it is agreed and understood that only two parties exist in this agreement whereby Company is a single entity and shall not be considered two entities, and Investor is a single entity.

### Contact Information:

**Professional Installers, LLC**

Aaron Hook & Melinda Cutler

3972 Fountaingrove Drive

High Point, North Carolina 27265

(913) 232-6677

**TMI Assets Trust**

Travis Morgan, Trustee

4225 Chamoune Avenue, Unit 314

San Diego, California 92115

(619) 832-1799

## Overview

The parties hereinafter agree that Investor (TMI Assets Trust) and Company (Professional Installers, LLC) enter into an agreement stipulating terms of Investor funding Company for the purpose of profit sharing with a focus on ongoing growth and profits to the mutual benefit of both parties.

The products and services for which this agreement governs is limited to all contracted exterior painting, exterior wood rot repair and replacement, window repair and replacement, gutter cleaning, installation, repair, replacement and related hardware, including but not limited to all LeafFilter® products. No other unrelated products or services are included in this agreement.

## Funding

The parties, Company and Investor, agree that Investor shall invest a minimum of twenty thousand ($20,000.00) dollars within thirty (30) days of commencement of this agreement. In return, Company agrees to use these investment funds for the sole purpose of performance of the above products and services. It is also understood that additional investment funding and reinvestments of profits will occur as so long as there are profits from the initial investment funds.

## Non-Compete Agreement

The parties agree not to compete with one another within the scope of products and services of this agreement. Competition includes an agreement with any other party or entity; or establishing a new entity; or performance on an individual capacity that directly competes with the terms of this agreement. Shall either party be in violation this clause at any time during the life of Company, it is agreed that damages shall be sought in a court of law whereby this agreement shall be in force at the agreed upon profit sharing schedule even if revenue and profits are performed with a different person or entity. Example; if a party or new entity is

established by either party, this shall warrant profit sharing with that new party or entity and the terms of this agreement remain in effect.

## Profit Sharing

The parties agree that in return for investment funding, Investor is entitled to 50% of all profits after expenses, labor, materials, equipment and other fees, taxes and incidental expenses related strictly to the above mentioned products and services. Expenses related to normal operational costs of running and managing Company's business is not considered an expense as part of this agreement. Additionally, maintenance related to equipment, vehicles and other related hardware shall be the responsibility of Company and is not an expense related to this agreement and investment funds, even if investment funds were used to purchase the equipment and vehicles. Company is entitled to the remainder 50% of profits.

## Guaranteed Duration and Dissolution of Agreement

The parties agree that this agreement is in force for the life of the Company with a 50% profit sharing unless one or both parties agree to dissolve this agreement. Should one or both parties agree to dissolve this agreement within the first six (6) years, it is agreed upon by both parties that Investor is guaranteed 50% of profits for a minimum of six (6) years from the date of this agreement. Profits in the amount of 10% each year thereafter shall be reduced by 10% each year, up to 10 years, thereafter a 10% profit shall be paid to Investor for the life of Company.

**Schedule:**

Year 1 = 50% Profit

Year 2 = 50% Profit

Year 3 = 50% Profit

Year 4 = 50% Profit

Year 5 = 50% Profit

Year 6 = 50% Profit

Year 7 = 40% Profit

Year 8 = 30% Profit

Page 3 of 7

Year 9 = 20% Profit

Year 10 = 10% Profit

Year 11 to Life of Company = 10%

Should one or both parties choose to dissolve this agreement in year 7 through life of Company, a reduction of 10% per year shall occur beginning on the date of written notification to the other party via certified mail, or a mutual agreement is signed. For example, If in year 11, dissolution of agreement is sought by either or both parties, the following will occur;

Year 1-11 = 50% Profit

Year 12    = 40% Profit

Year 13    = 30% Profit

Year 14    = 20% Profit

Year 15+ = 10% Profit for Life of Company

Should a new replacement agreement be signed by both parties, this agreement shall no longer be in effect.

# Repayment of Initial Investment

The parties agree that all initial funding to be reimbursed through an additional 10% of profits until paid in full, whereas Investor shall receive 50% profits and an additional 10% reimbursement until all initial funding is repaid. Once initial investment has been repaid, the additional 10% reimbursements shall cease.

Any and all additional funding or reinvestments of profits that are used for Company in this Agreement shall also be reimbursed at a 10% profit until those additional funds are repaid.

# Schedule of Disbursements and Payments

The parties agree that profit sharing disbursements will initially occur on a weekly basis through July 29, 2020, thereafter on a monthly basis, for all contracted work performed under this agreement. During initial weekly disbursements, contracted worked performed from Monday through Sunday shall be paid the following Wednesday. Thereafter, monthly disbursements shall

occur on or before the 10th day of each month for the prior calendar month (i.e. profits for the month of August shall be paid on or before September 10th).

**Initial weekly disbursements schedule is as follows:**
06/12/2020 to 06/14/2020 - Payable on 06/17/2020
06/15/2020 to 06/21/2020 - Payable on 06/24/2020
06/22/2020 to 06/28/2020 - Payable on 07/01/2020
06/29/2020 to 07/05/2020 - Payable on 07/08/2020
07/13/2020 to 07/19/2020 - Payable on 07/22/2020
07/13/2020 to 07/19/2020 - Payable on 07/22/2020
07/20/2020 to 07/26/2020 - Payable on 07/29/2020

**Thereinafter, monthly disbursements schedule is as follows:**
07/27/2020 to 08/31/2020 - Payable on or before 09/10/2020
09/01/2020 to 09/30/2020 - Payable on or before 10/10/2020
10/01/2020 to 10/31/2020 - Payable on or before 11/10/2020
Etc...

## Equipment Ownership, Responsibility and Reimbursement

The parties agree that any and all equipment, vehicles, hardware or other tangible items that are purchased with investment funds are the sole property of Company, so long as the totality of initial investment funds were reimbursed to Investor. Additionally, Company agrees that all maintenance, repairs and replacement costs of equipment, vehicles and other hardware are the responsibility of Company and is not a deductible expense as part of this agreement.

## Management, Decision Making and Reporting

The parties agree that any and all decision making for day to day operations and decisions shall be the sole responsibility of Company. Company agrees that regular reporting to Investor shall occur with expenses, progress and profits to ensure that investment funds are not being wasted or misused. Company agrees to send a full accounting of expenditures to Investor at least once per month.

## Taxes, Liability, Insurance and Government Compliance

Company agrees that Company shall have full coverage liability insurance for all vehicles, equipment and property. Company agrees to carry death or disability insurance for all employees whether independent contractors or employed by Company. Additionally, Company agrees to carry state unemployment insurance for all employees except contractors who work on a 1099 basis. Insurance must be held continuously and without interruption for the life of Company.

Additionally, Company agrees to be in 100% compliance with all federal, state and local tax agencies.

## Required Performances of Company

1. Build exterior finishing services division of Company outlined in this agreement.
2. Establish employees and subcontractor teams to perform products and services outlined in this agreement.
3. Purchase equipment, vehicles and tools to perform duties related to products and services outlined in this agreement.
4. Aggressively advertise products and services for growth of Company.
5. Establish ongoing contracts locally and nationally.
6. Establish builder contracts locally and nationally.

## Jurisdiction and Enforceability

Parties agree that this agreement applies to all contracts and work performed by Company in any and all U.S. states and territories and is not limited to any individual state or territory. The laws of the state of Kansas shall prevail in the event of a contractual dispute. Furthermore, any unenforceable portion of this agreement under Kansas law shall be excluded and the rest of this agreement remains in effect and enforceable.



_____    6/11/20
Aaron Hook - Professional Installers, LLC          Date

_____    6.12.20
Melinda Cutler - Professional Installers, LLC      Date

_____    6/11/2020
Travis Morgan, Trustee - TMI Assets Trust          Date

EXHIBIT 3

# Loan Agreement

## Aaron Hook - TMI Assets Trust

**Dated: August 31, 2021**

## Parties

This agreement is between Aaron Hook (hereinafter referred to 'Borrower') a resident of the state of North Carolina and Travis Morgan, Trustee for TMI Assets Trust (hereinafter referred to 'Lender'), a resident of the state of California. No other parties are included in this agreement. This agreement shall be governed by the laws of the state of California where Lender currently resides and will continue to reside in the foreseeable future.

**Contact Information:**

|  <u>BORROWER</u>  |  <u>LENDER</u>  |
|---|---|
| Aaron Hook | TMI Assets Trust |
| 3972 Fountain Grove Drive | Travis 'Traci' Morgan, Trustee |
| High Point, North Carolina 27265 | 4225 Chamoune Avenue, Unit 314 |
| (336) 802-0259 | San Diego, California 92115 |
| aaronhook80@gmail.com | (619) 832-1799 |
|  | traci.morgan.sd@gmail.com |

## Overview

The parties hereinafter agree that Lender and Borrower enter into an agreement stipulating terms of a monetary Loan funding Borrower for the purpose of a personal loan. This Loan Agreement includes current loans and prior loans previously paid to Borrower.

## Funding

The loans included in this agreement consists of $18,000.00 (Eighteen Thousand Dollars) paid on June 3, 2020 and June 12, 2020 via Wire Transfer, $2,500.00 (Two Thousand, Five Hundred

Dollars) paid on September 1, 2020 via Zelle Bank of America Transfer and $2,500.00 (Two Thousand, Five Hundred Dollars) paid on August 31, 2021 via Square Invoice for a total of $23,000.00 (Twenty Three Thousand Dollars) in principal monies.

## Simple Interest Loan (20% APR)

The parties agree that Borrower shall pay lender simple interest in the amount of 20% APR (Annual Percentage Rate) calculated monthly rounding to the nearest 1st of each month. Interest shall be calculated on a monthly basis at 1.6666% rounded to the nearest dollar and not calculated on a daily basis. Interest shall accrue monthly on the original principal and all penalties incurred each month (i.e. any penalties shall be included in the principal loan amount owed each month).

## Monthly Payment, Due Date & Grace Period

Borrower agrees to pay Lender a minimum payment of $250.00 (Two Hundred Fifty Dollars) by the due date of the 5th calendar day of each calendar month. Lender agrees to allow a 5 day grace period without incurring any penalties. Funds are to be received by Lender no later than midnight ET (Eastern Time Zone) on the 10th of each calendar month or penalties will apply. Date of first payment due will be October 5, 2021.

## Late Payment Penalty

Should Borrower not make the minimum payment amount of $250.00 (Two Hundred Fifty Dollars) by midnight  ET (Eastern Time Zone) on the 10th of each calendar month (incl;udes due date of the 5th plus a 5 day grace period) then a late payment penalty of $100.00 shall be applied to the original loan amount and shall be included in the monthly interest amount owed.

## Early Payments

Lender agrees that any and all early payments or payments larger than the minimum monthly amount of $250.00 (Two Hundred Fifty Dollars) will not incur any penalties or fees. All payments that exceed the minimum monthly payment shall be applied to the full principal amount plus any late payment penalties accrued.

## Changes in Contact Information

Borrower agrees to update Lender of any and all changes of physical address, phone number and email address within 30 (Thirty) days of such changes.

## Jurisdiction and Enforceability

Borrower and Lender agree that this agreement is governed by the state of California and California law shall prevail in the event of a contractual dispute. Furthermore, any unenforceable portion of this agreement under California law shall be excluded and the rest of this agreement remains in effect and enforceable.

By signing below, the parties agree that they have read, understand and agree to all of the terms of this agreement.



_____     August 31, 2021
Aaron Hook                                   Date

_____     August 31, 2021
Travis 'Traci' Morgan, Trustee, TMI Assets Trust     Date